# UNITED STATES DISTRICT COURT

## for the

# EASTERN DISTRICT OF MISSOURI - ST. LOUIS DIVISION

-o0o-

| | |
|---|---|
| Joseph Ketsenburg, pro se, | ) |
| Plaintiff; | ) Case No. |
| | ) |
| v | ) **JURY TRIAL DEMANDED** |
| | ) |
| Trans Union, LLC, | ) Honorable District Judge |
| Defendant. | ) |

## BRIEF FOR MOTION FOR APPOINTMENT OF COUNSEL

COMES NOW, Joseph Matthew Ketsenburg, su juris, hereinafter "Plaintiff," pro se and in necessity, and humbly submits this motion seeking the appointment of legal counsel by This Honorable Court pursuant to Title 28 U.S.C. § 1915(e)(1). In support of this motion, Plaintiff submits the following:

## BACKGROUND

As detailed in Plaintiff's Complaint the above captioned matter is brought to seek judicial resolution of multiple violations of the Fair Credit Reporting Act ("FCRA") by Defendant Trans Union, LLC ("Defendant").

Plaintiff has incurred financial losses exceeding $ 5,000.00 over a period of almost two years in an attempt to obtain certain resolutions from Defendant. For almost a year, Defendant has failed to correct Plaintiff's consumer report or disclose to him the procedures used to conduct the reinvestigation into his disputes.

## RELEVANT FACTS FOR JUDICAL NOTICE

Plaintiff requests judicial notice of Plaintiff's status on supervised release. The conditions and prohibitions of Plaintiff's supervised release obstruct and/or hinder Plaintiff's ability to prosecute this action and may result in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure. See generally *United States v Ketsenburg*, Case No. 4:09-cr-000690-CDP, ECF Doc 52.

It may be relevant to This Honorable Court to consider the legal view of "confinement" or "imprisonment" in the context of supervised release.

While the public may be mystified by the distinctions between supervised release, parole, or probation, the distinctions do have relevant consequences. Habeas corpus, for example, was traditionally considered the conduit through which a physically confined person may pursue relief. Generally, it did not appear that a person who was not physically confined could obtain habeas relief. This changed, however, as the courts began to recognize deprivations of liberty that warranted various forms of judicial relief.

As early as 1763, habeas corpus was used to obtain relief for a person "held" by contractual relations for "bad purposes". See *Rex v Delaral,* 3 Burr. 1434, 97 Eng. Rep. 913 (K.B. 1763). In the early 19th century, habeas permitted one parent to obtain his children from

the other, even though the children were "not under imprisonment, restraint, or duress of any kind." See *Earl of Westmeath v Countess of Westmeath,* as set out in a reporter's footnote in *Lyons v Blenkin,* 1 Jac. 245, 264, 37 Eng. Rep. 842, 848 (Ch. 1821); accord *Ex parte M'Clellan* 1 Dowl. 81 (K.B. 1831). See generally, *Jones v Cunningham,* 371 U.S. 236; 839 S. Ct. 373; L.Ed.2d 285 (1963).

In the present action, Plaintiff's status on supervised release presents collateral consequences for his ability to prosecute the action. Plaintiff is allowed only two (2) hours per week for use of computers and internet. This use is for both typing pleadings and legal research, and poses grave concerns to Plaintiff regarding how effective his *pro se* action may be conducted. It is important to note that the Court of Appeals for the Eighth Circuit views those collateral consequences as determinative factors in deciding a ruling.

In *Spencer v Kemna,* 91 F.3d 1114 (8th Cir. 1996) the Appellate Court determined the petitioner's collateral consequences had become moot. This decision was made in light of *Lane v Williams,* 455 U.S. 624, 632; 102 S.Ct. 1322; 71 L.Ed.2d (1982); however, the Appellate Court acknowledged that its interpretation of *Lane* did not accord with that of the Second and Ninth Circuits in *United States v Parker,* 952 F.2d 31, note 7 (2nd 1991) and *Robbins v Christianson,* 904 F.2d 492 (9th 1990). The Supreme Court said in hearing this matter that

> "incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction…[and that]… some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequences' of the conviction – must exist if [a] suit is to be maintained."

See *Spencer v Kemna,* 523 U.S. 1,8; 118 S.Ct. 978; 140 L.Ed 2d 43 (1998).

The stipulations of Plaintiff's supervised release prohibit any use of computers and internet without prior approval. Plaintiff has obtained approval to using such for no more than two (2) hours per week, and this at certain locations previously approved by the United States Probation Officer. Unfortunately, due to the COVID-19 pandemic, those locations are closed and or severely limited on availability, thus Plaintiff has no access to utilize computers and internet himself, and is forced to pay for such services through third parties.

These collateral consequences do directly impair Plaintiff's ability to prosecute this action *pro se*. Plaintiff is unable to research legal resources or even draft pleadings himself, putting him at an unfair disadvantage. Plaintiff is self-taught, and with extremely limited experience. Without adequate representation, proceeding *pro se* could result in a complete miscarriage of justice or a proceeding inconsistent with the rudimentary demands of fair procedure.

## LEGAL FRAMEWORK

Plaintiff avers that this Motion for Appointment of Legal Counsel is supported from three primary sources. First, This Honorable Court has authority to request counsel pursuant to 28 U.S.C. § 1915(e)(1). Second, in light of Plaintiff's restrictions due to supervised release, it appears This Honorable Court is uniquely situated to ensure Plaintiff has constitutional access to the courts, satisfying due process requirements and the rudimentary demands of fair procedure, consistent with the principles underlying *Bounds v Smith*, 430 U.S. 817; 97 S.Ct. 1491; 52 L.Ed.2d 72 (1977). Third, This Honorable Court may consider the factors relevant for appointing counsel pursuant to *Johnson v Williams*, 788 F.2d 1319 (8th Cir. 1986).

## I. AUTHORITY PURSUANT TO § 1915(e)(1)

Title 28 U.S.C. § 1915(e)(1) provides, "[t]he court may request an attorney to represent

any person unable to afford counsel," *Id.* While this authority does not appear to be predicated

upon a finding of poverty, it is provided in that context. To support enforcement of this authority,

Plaintiff has submitted a motion seeking leave to proceed in forma pauperis.

The discretionary function of 1915(e)(1) does not mandate court appointed counsel in a

civil-rights action, as there are no constitutional or statutory rights to counsel in a civil-rights

action. *Phillips v Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006); *Edginton v Missouri*

*Dep't. of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds*; *Doe v Cassel*, 403

F.3d 986, 989 (8th Cir. 2005). Instead, as upheld by the Supreme Court, the courts "*may request*

an attorney to represent" an indigent litigant (emphasis added). *Mallard v United States Dist.*

*Court for Southern Dist. Of Iowa* 490 U.S. 296, 298; 109 S.Ct 1814; 104 L.Ed.2d 318 (1989)

It appears important to first note that the discretionary function of 1915(e)(1) does not

authorize the court to compel an unskilled or unwilling attorney to fulfill such request for

appointment to an indigent plaintiff. In order to comply with this guidance, the Court of Appeals

for the Eighth Circuit has ordered "the chief judge of each district to seek to cooperation of the

bar associations and the federal practice committees of the judge's district to obtain a sufficient

list of attorneys practicing throughout the district so as to supply the court with competent

attorneys who will serve in pro bono situations," *Nelson v Redfield Lithograph Printing*, 728

F.2d 1003, 1005 (8th Cir. 1984).

In addition, the Eighth Circuit has held that "an indigent pro se prison litigant who has

met his burden of showing his complaint not to be frivolous pursuant to 28 U.S.C. § 1915(d)

should be appointed counsel where necessary," *Reynolds v Foree*, 771 F.2d 1179, 1181 (8th Cir. 1995)(per curiam). The district court should "determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel," *Nelson*, supra, at 1005.

Thus, it appears that This Honorable Court has sufficient statutory authority to request counsel for Plaintiff pursuant to § 1915(e)(1).

## II. SUFFICIENT STANDING PURSUANT TO *BOUNDS V SMITH*

In *Bounds v Smith*, 430 U.S. 817 (1977), the fundamental issue presented was the collateral consequences faced by certain individuals and their right to have access to the courts, a constitutional right made possible only by the means of sufficient access to legal materials or alternative forms of legal representation. It was not enough that these individuals were physically incarcerated and suffered collateral consequences due to their incarceration, but that the collateral consequences did not allow them meaningful access to the courts. The Supreme Court has held, per curiam, that access to legal materials or alternative forms of legal knowledge are constitutionally mandated for every citizen seeking redress of grievances. *Younger v Gilmore*, 404 U.S. 15 (1971). This is evidenced by allowing the public access to legal libraries of the courts, whether state or federal. Because Plaintiff is on federal supervised release with restrictions regarding access to legal resources, it appears Plaintiff is sufficiently similarly situated to the plaintiffs in *Bounds* and *Younger* to warrant consideration of those cases.

While some states reject the claim that indigent litigants have a constitutional right to appointed counsel for certain matters, such as discretionary appeals, the Supreme Court outlined

the State's obligation to "assure the indigent [litigant] an adequate opportunity to present his claims fairly," *Ross v Moffit*, 417 U.S. 600, 616 (1974). "[M]eaingful access" to the courts is the touchstone. See *id.*, at 611, 612, 615.

Accessing the courts requires a fundamental understanding of such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and the types of relief available. As the Court stated in *Bounds*, "[i]t would verge on incompetence for a lawyer to file an initial pleading without researching such issues...[moreover,] a lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action," *Id.* at 825

It is this essential right to access the courts that has caused the Supreme Court to "constantly emphasize[]" that civil actions are of "fundamental importance...in our constitutional scheme" because they directly protect our most valued rights. *Johnson v Avery*, 393 U.S. 483, 485 (1969); *Wolff v McDonnell*, 418 U.S. 539, 579 (1974).

In consideration of a litigant's access to the courts and the necessary understanding of legal application required for such access, the courts routinely address the situation requiring a pro se litigant present a meritous and colorable claim. Proceedings in forma pauperis require the court's screening of the complaint, § 1915(e)(2)(B), without ensuring that said litigant has sufficient access to legal resources needed to present a meritous claim. Litigants in a civil rights action such as a complex FCRA claim are often caught in a "cruel paradox" in which a "carefully reasoned, well-documented petition in support of a motion for the appointment of counsel may be deemed evidence of an ability to proceed without counsel," Mushlin, et al., *Rights of Prisoners* (2d Ed.), Vol. 2, p. 45 (1993). This "cruel paradox" is highlighted by the fact

that pro se litigants must sufficiently present a colorable claim, while sufficient legal knowledge to present a colorable claim is often used to deny appointment of counsel. C.f. *Mosby v Mabry*, 697 F.2d 213, 214 – 215 (8th Cir. 1982).

## III. RELEVANT FACTORS PURSUANT TO *JOHNSON V WILLIAMS*

Overwhelmingly, the factors considered by courts in deciding whether to appoint counsel are derived from those established in *Johnson v Williams*, 788 F.2d 1319, 1322 – 1323 (8th Cir. 1986). Those factors included: a) factual complexity of the case, *Maclin v Freake*, 650 F.2d 885, 888 (7th Cir. 1981)(per curiam); b) the ability of the indigent to investigate the facts, *id.*, citing *Shields v Jackson*, 570 F.2d 284 (8th Cir. 1978)(per curiam), and *Peterson v Nadler*, 452 F.2d 754 (8th Cir. 1971)(per curiam); c) the existence of conflicting testimony, *Maclin*, 650 F.2d at 888, citing *Manning v Lockhart*, 623 F.2d 536 (8th Cir. 1980)(per curiam); d) the ability of the indigent to present his claims, *Maclin*, 650 F.2d at 889, citing *Drone v Hutto*, 565 F.2d 543 (8thCir. 1977)(per curiam); and, e) the complexity of the legal issues, *Maclin*, 650 F.2d at 889. While these factors are not an exhaustive checklist determining whether to appoint counsel, neither should more weight be given to any one factor if such would lead to denial of counsel (such as an undeveloped record that does not disclose discovery materials supporting a colorable claim, especially when the request for counsel is made at the outset of the proceedings).

A. Factual Complexity of the Case.

The matter presently before This Honorable Court involves matters of identity theft, the Fair Credit Report Act ("FCRA"), and business practices governed by the FCRA. It involves

consumer protection laws, but one far more complex than a product liability case in that it is subject to far more statutes, regulations, and even banking procedures. Compliance with the FCRA must be conducted in conjunction with other legislation such as the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), and even applicable portions of the Code of Federal Regulations ("CFR").

The facts of the matter presented by Plaintiff relate to the reporting of inaccurate information, failure to correct that information in a timely matter, and refusal by Defendant to provide FCRA-mandated disclosures.

Providing disclosures under the FCRA is a routine business practice governed generally by Title 15 U.S.C. §§ 1681c-1(a)(2)(B), 1681i(a)(6), 1681g(a), and 1681g(e). Parallel to these statutes are obligations pursuant to 12 C.F.R. § 222.1 and 16 C.F.R. § 602.1. A plaintiff who has a colorable claim for violations of § 1681i may pursue judicial review under §§ 1681n and 1681o.

A *pro se* litigant may know the facts of the case from his perspective, but face dismissal due to presenting his claim under the incorrect standard of review. This would not obfuscate the refusal of the defendant to provide disclosures, but leads to the same outcome – the plaintiff has lost his case.

B. Ability of Indigent to Investigate the Case.

An indigent *pro se* litigant, faces two primary hurdles when investigating his case. First, he must investigate the actual facts supporting his claims. Second, he must investigate the procedures and mechanisms whereby he may obtain relief.

In the present matter, personally identifying information about Plaintiff was submitted to certain business entities in an act of identity theft. Plaintiff requested from the business entities disclosures pursuant to Title 15 U.S.C. § 1681g(e), which mandates disclosures from business entities when an act of identity theft has occurred. Plaintiff contacted more than fifteen of these furnishers, however, received the requested disclosures from only two of these business entities. Despite multiple requests to these companies and even complaints to the Consumer Financial Protection Bureau, Plaintiff was unable to obtain these disclosures. In the present action, Plaintiff made repeated requests over a span of nearly eighteen months. Defendant has not disclosed Plaintiff's consumer file in its entirety, identified the furnishers of each specific item of information, or disclosed the procedures it used to investigate his disputes or the results of those investigations. Not only has Plaintiff had his personal privacy invaded, but his ability to investigate the identity theft has been obstructed by the very business entities mandated by Congress with the task of assisting consumers with such investigations.

Second, a *pro se* litigant does not have at his disposal the experience or resources a seasoned attorney may have. Mechanisms such as discovery, subpoenas, interrogatories, and depositions all serve to investigate the facts of a case yet may only be used at defined points in the proceedings. A *pro se* litigant does not have the experience in using these tools that a seasoned attorney has, thus placing the *pro se* litigant at an unfair disadvantage.

C. Existence of Conflicting Testimony.

A Motion for Appointment of Counsel is often made at the onset of civil proceedings, at a time when conflicting testimony has yet to fully develop. Unfortunately, a defendant in such

proceedings as these is caught in a paradox in that the suit is often the result of a conflict between the parties. The plaintiff who files such a suit has as *prima facie* evidence the "testimony" of the defendant conflicting with that of the plaintiff. The plaintiff asserts his facts as truth presenting a viable cause of action, and the defendant, his "truth" supporting dismissal of such as case.

The lack of conflicting testimony during the initial stages of a suit should not be the sold determiner in whether to or not to appoint counsel. Taking into account the complexity of the facts and experience of counsel in representing fairly the matter provides much guidance. The *pro se* litigant is faced with dismissal, not because he does not have a viable clam, but because he is unable to properly and fully present his claims and utilize the mechanisms available to fully uncover the facts.

D. Ability of Indigent to Present His Claims.

The *pro se* litigant faces many hurdles that a seasoned attorney does not. Not only must the *pro se* litigant submit his claim according to the proper standard of review, but he must also utilize these tools (i.e., discovery, subpoenas, and interrogatories) that fully develop and support his claims. When given an opportunity or direction in utilizing these tools, the *pro se* litigant may actually prove successful in his action; however, nothing about litigation requires an impartial judge or defense team advice a plaintiff on procedures which may result in his successful action.

Couple the complexities due to inexperience with the actual cost of litigation and the *pro se* indigent faces a disadvantage which may result in a preceding inconsistent with rudimentary demands of fair procedure or a complete miscarriage of justice. The cost of depositions,

obtaining discovery, or serving subpoenas, for example, may be costs the indigent cannot afford. Inability to incur expenses does not serve the best interests of justice nor the public at large.

E. Complexity of the Legal Issues.

The complexities of the facts and complexities of the legal issues in an FCRA action are often intertwined. The disclosure requirements, for example, both mandate or permit a business entity is statutorily authorized to make these disclosures, a business entity acting under § 1681g(e) does not have to produce documentation. Conversely, a business entity acting under § 1681i(a)(6) must provide documentation upon request. Likewise, a business entity is not subject to civil liability under one standard of review but may be liable under another. Because the overall matter in the example is the refusal of a business entity to make disclosures, justice demands that a plaintiff be allowed a fair opportunity to submit such maters without being stymied by the legal complexities.

**PRAYER FOR RELIEF**

WHEREFORE NOW, Plaintiff Joseph Matthew Ketsenburg humbly prays This Honorable Court seek the recruitment of counsel in the instant action.

**VERIFICATION**

Plaintiff Joseph Matthew Ketsenburg hereby affirms under solemn oath that the foregoing statements are true and accurate, and not misleading, under penalty of perjury within

these United States, pursuant to Title 28 U.S.C. § 1746, are not made under threat, duress or

coercion, and is competent to testify if called upon, executed under signature and seal this

6 _th_ day in the month of _O ctober_ , 20 _21_ .


Joseph Matthew Ketsenburg
224 Reuter Street, Apartment 4
Park Hills, Missouri 63601
573-631-8323
cakdparalegal@gmail.com

///

///

///

///

///

///

///

///

///

///

///

///

///

Brief for Motion for Legal Counsel
Page 13 of 13