UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MATTHEW KETSENBURG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )    No. 4:21-cv-01205-SRC |
| TRANS UNION, LLC, | ) ) ) |
| Defendant. | ) |

**Memorandum and Order**

This matter is before the Court on the application of self-represented plaintiff Joseph Matthew Ketsenburg to proceed in the district court without prepaying fees and costs. Having reviewed the application and the financial information submitted in support, the Court grants the application. Additionally, for the reasons discussed below, the Court directs the Clerk of Court to issue process on defendant Trans Union, LLC.

**Legal Standard on Initial Review**

This Court is required to review a complaint filed *in forma pauperis*, and must dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the

speculative level." *Twombly,* 550 U.S. at 555.  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679.  The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

## The Complaint

Ketsenburg brings this action against defendant Trans Union, LLC under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*  Ketsenburg states that while he was incarcerated from May 22, 2018 to January 28, 2019, he was the victim of identity theft.  Once he discovered the identity theft, he submitted police reports to law enforcement.  He also requested and received his consumer file from defendant Trans Union on April 6, 2020.  Ketsenburg disputed items listed in the consumer file and sent notices of dispute to Trans Union on August 24, 2020.  He alleges that Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) (defining "consumer reporting agency" as "any person which, for monetary fees . . . regularly engages . . . in the practice of assembling or evaluating consumer

credit information . . . for the purpose of furnishing consumer reports to third parties" using "any means or facility of interstate commerce").

Ketsenburg states that on September 17, 2020, he spoke with a Trans Union employee, who verified that the disputed items remained in Ketsenburg's consumer file and were not identified as "disputed by customer."  On August 20, 2021, Ketsenburg again spoke with Trans Union employees who stated that an adverse account had been removed from his file; however, Ketsenburg alleges this information was incorrect and the account had not been removed.  Finally, Ketsenburg states that there are still inaccuracies in his credit report.  He states he has notified Trans Union of these inaccuracies but that the inaccuracies remain, in violation of his FCRA rights.  He also alleges that Trans Union failed to conduct a reasonable reinvestigation and failed to disclose a description of the procedures it used to reinvestigate his disputes.

For relief, Ketsenburg seeks $25,000 in actual damages plus additional unspecified punitive damages.  He also seeks liquidated damages of $10,000 plus $1,000 per day for each day after August 24, 2020 during which his credit report remained inaccurate.  Finally, he asks the Court to order Trans Union to cease and desist all disclosures of his consumer information pending the resolution of this lawsuit.

**Discussion**

"Congress enacted the FCRA to address a 'need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy.'"  *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014) (quoting 15 U.S.C. § 1681(a)(4)).  The FCRA places responsibilities on both consumer reporting agencies and those that furnish them with information.  *Id.*  The Act "has several mechanisms to protect consumer credit information, some of which apply to credit reporting

3

agencies while others apply to users of the information provided by those agencies." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008).

Section 607(b) of the Act states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Act also requires that:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). The Act also requires a consumer reporting agency to:

> provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

15 U.S.C. § 1681i(a)(6)(A). "As part of, or in addition to," that notice, a consumer reporting agency must include:

> a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available . . . .

15 U.S.C. § 1681i(a)(6)(B)(iii). If a consumer requests a paragraph (6)(B)(iii) description, the consumer reporting agency must provide it within fifteen days. 15 U.S.C. § 1681i(a)(7).

Further, section 617 of the Act provides:

(a) In general

4

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
>> (1) any actual damages sustained by the consumer as a result of the failure; and
>>
>> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
>
> (b) Attorney's fees
>
> On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681o; *see also* 15 U.S.C. § 1681n (making the same recovery—plus punitive damages—available upon a showing of willful noncompliance).

Here, Ketsenburg has alleged that Trans Union has included inaccurate information on his credit report since at least August 24, 2020, that he communicated with Trans Union about the inaccuracies of this information, and that Trans Union has both failed to correct his inaccurate credit report and has provided that inaccurate report to a third party.  He also alleges that Trans Union failed to conduct a reasonable reinvestigation and failed to provide him with documentation of the procedures used to reinvestigate his dispute.  On initial review, the Court accepts these allegations as true and makes all reasonable inferences in plaintiff's favor.  *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019).  The Court finds that Ketsenburg has pleaded sufficient facts allowing the Court to draw the reasonable inference that Trans Union willfully or negligently failed to comply with the requirements of 15 U.S.C. §§ 1681e(b), 1681i(a)(1), 1681i(a)(6)(iii), and 1681i(a)(7).  Therefore, the Court directs the Clerk of Court to issue process on defendant Trans Union as to Ketsenburg's FCRA claims.

**Motion to Appoint Counsel**

In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Ketsenburg has demonstrated that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex.

Accordingly, the Court grants Ketsenburg's [2] Application to Proceed in the District Court Without Prepaying Fees and Costs. The Court also grants Ketsenburg's [3] Motion for Service of Process at Government Expense. The Court denies without prejudice Ketsenburg's [5] Motion for Appointment of Counsel. The Court directs the Clerk of Court to issue process or cause process to issue on defendant Trans Union, LLC by serving its registered agent at Prentice-Hall Corporation, 221 Bolivar Street, Jefferson City, Missouri 65101.

Dated this 3nd day of March 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE